NOTE: This disposition is nonprecedential.

# United States Court of Appeals for the Federal Circuit

---

**LEROY S. ROBINSON, JR.,**
*Claimant-Appellant*

**v.**

**ROBERT WILKIE, SECRETARY OF VETERANS AFFAIRS,**
*Respondent-Appellee*

---

2020-1129

---

Appeal from the United States Court of Appeals for Veterans Claims in No. 15-715, Senior Judge Mary J. Schoelen.

---

Decided: January 7, 2021

---

TARA R. GOFFNEY, Bronx, NY, for claimant-appellant.

MOLLIE LENORE FINNAN, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, DC, for respondent-appellee. Also represented by JEFFREY B. CLARK, TARA K. HOGAN, ROBERT EDWARD KIRSCHMAN, JR.; BRIAN D. GRIFFIN, EVAN SCOTT GRANT, Office of General Counsel, United States Department of Veterans Affairs, Washington, DC.

―――――――――

Before O'MALLEY, TARANTO, and STOLL, *Circuit Judges*.

O'MALLEY, *Circuit Judge*.

Leroy S. Robinson, Jr. ("Robinson") appeals from a single-judge decision of the United States Court of Appeals for Veterans Claims ("Veterans Court") granting Robinson some, but not all, requested attorney fees pursuant to the Equal Access to Justice Act ("EAJA"), 28 U.S.C. § 2412. *See Robinson v. Wilkie*, No. 15-0715(E), 2019 WL 3938609 (Vet. App. Aug. 21, 2019). Robinson argues that the Veterans Court improperly required him to file a motion for leave to amend his initial EAJA application, wrongly decreased his fees award by excluding certain hours spent on an earlier appeal to this court, and, in the alternative, lacked authority to resolve Robinson's EAJA application because no final judgment was entered in this case. For the reasons discussed below, we find that any errors in the Veterans Court's procedure were harmless. We thus *affirm* as to the legal issues raised by Robinson and *dismiss* Robinson's challenge to the court's accounting.

## I. BACKGROUND

Robinson served two stints in the United States Marine Corps: from August 1966 to September 1968 and from June 1972 to May 1973. In August 2001, Robinson filed a claim with the Veterans Administration ("VA") seeking service connection for post-traumatic stress disorder ("PTSD"), which the VA granted with an effective date of December 3, 2004. Robinson appealed the VA's effective date determination to the Board of Veterans' Appeals ("Board"). On December 3, 2014, the Board denied Robinson an earlier effective date.

On February 20, 2015, Robinson appealed, through counsel, the Board's decision to the Veterans Court. For over two years, between May 2015 and August 2017, the

parties engaged in an extended dispute regarding the content of the record before the agency ("RBA"). In June 2015, Robinson filed a motion with the Veterans Court, pursuant to United States Court of Appeals for Veterans Claims Rule 10(b), disputing the content of the RBA. In particular, Robinson noted that several documents in his possession were missing from the RBA, including certain medical records. Robinson argued that he should be allowed to examine the original paper claim file, rather than just the VA-provided electronic records. The Secretary responded that the official claim file did not contain the original paper documents but was instead composed of documents that had been scanned and electronically uploaded to the Veterans Benefits Management System and Virtual VA electronic databases.

In July 2016, following oral argument, the Veterans Court held that the Secretary's refusal to allow Robinson's attorney access to the original paper documents was contrary to Rule 10(d), which allows appellants access to "original material." *Robinson v. McDonald*, 28 Vet. App. 178, 184 (2016). The court ordered that "the Secretary assemble all of the appellant's paper source documents" and "provide them to the appellant's representative for review" within fifteen days. *Id.* at 192.

On August 17, 2016, the Secretary notified the Veterans Court that the documents had been mailed to the Philadelphia regional office ("RO"). Robinson's counsel was scheduled to visit the RO on August 30, 2016. When Robinson's counsel arrived for her appointment, however, she was informed that the claim file was unavailable because it had been sent to a vendor for scanning eleven days earlier.

Thereafter, on September 12, 2016, Robinson filed two motions with the Veterans Court—a motion to hold the Secretary in contempt and a motion for sanctions. On the same day, the Secretary appealed to this court the

Veterans Court's July 2016 decision ordering production of the paper file. Given the interlocutory appeal, the Veterans Court decided to hold Robinson's motions in abeyance.

In November 2016, Robinson filed a motion to dismiss the Secretary's appeal, arguing that it was an improper appeal from a non-final order and that it was frivolous. The Secretary responded by filing a motion to voluntarily withdraw the appeal. Robinson then requested that this court sanction the Secretary. We issued an order on January 25, 2017, granting the Secretary's motion to withdraw the appeal, denying as moot Robinson's motion to dismiss, and denying Robinson's request for sanctions. *Robinson v. Snyder*, No. 2016-2653, 2017 WL 4277641 (Fed. Cir. Jan. 25, 2017).

The case then returned to the Veterans Court, where the record dispute was finally resolved, and Robinson received all outstanding documents. The Veterans Court also granted-in-part Robinson's motions for contempt and sanctions. The court found the Secretary in civil contempt because he did not comply with the July 2016 order. Specifically, it found "scheduling the appointment and subsequently sending the documents off-site prior to the appointment constitutes gross negligence and a gross lack of diligence" and imposed a sanction in the amount of $1,411.83 for the time Robinson's counsel expended in her failed efforts to inspect the paper file. J.A. 392–93. The Veterans Court further found, however, that the remainder of the Secretary's conduct did "not rise to the level of sanctionable offense." *Id.* at 392. On the same day, March 5, 2018, the Veterans Court granted the parties' joint motion to vacate the December 2014 Board decision and remanded to the Board for further proceedings. The mandate issued simultaneously with the remand order.

Robinson filed an application ("initial EAJA application") for attorney fees pursuant to the EAJA on April 4, 2018. The application requested market rate legal fees

under the "special factor" provision of 28 U.S.C. § 2412(d). *See* 28 U.S.C. § 2412(d)(2)(A) ("[A]ttorney fees shall not be awarded in excess of $125 per hour unless the court determines that an increase in the cost of living or a special factor, such as the limited availability of qualified attorneys for the proceedings involved, justifies a higher fee.")  In total, the application requested $207,110.75 in attorney fees and $2,874 in expenses.  The attorney fees request reflected 452.6 hours—388.2 hours spent on the RBA dispute at a "special factor" rate and 64.4 hours at the New York market rate.  Robinson requested the "special factor" adjustment based on *Starry Associates, Inc. v. United States*, 131 Fed. Cl. 208 (2017) ("*Starry I*"), in which the United States Court of Federal Claims held that "egregious" agency misconduct qualified as a "special factor" warranting an increased fee under § 2412(d)(2)(A).  Robinson argued that the Secretary's delay and "intransigence" during the RBA dispute were egregious under the *Starry I* analysis.  J.A. 54–56.

The Secretary filed a response to Robinson's initial EAJA application on June 18, 2018.  The response raised four arguments: (1) the application contained miscalculations; (2) Robinson was not entitled to a "special factor" adjustment under § 2412(d)(2)(A); (3) certain hours were unreasonably spent; and (4) certain expenses were not sufficiently supported.

A few days later, on June 22, 2018, this court issued its decision in *Starry Associates, Inc. v. United States*, 892 F.3d 1372 (Fed. Cir. 2018) ("*Starry II*").  We held that "egregious agency misconduct is not a 'special factor' under § 2412(d)(2)(A)." *Id.* at 1377.  We explained that enhanced fees for such misconduct may be available under § 2412(b), but that subsection (d) did not support such a position.  *Id.* at 1382–83 & n.3.  The Secretary filed a notice of supplemental authority notifying the Veterans Court of this development.

On August 15, 2018, Robinson filed an "amended" EAJA application. The reasons Robinson provided for filing the amendment included "to amend costs and expenses" and to "provide for different and/or alternative relief based on the recent CAFC holding in [*Starry II*]." J.A. 63. The application added 28 U.S.C. §2412(b) as a basis for awarding fees. The sums requested in the amended application were $193,345.00 in attorney fees plus costs of $3,389.91. This new accounting was the result of Robinson reapportioning the rates and hours requested and "add[ing] . . . hotel and travel invoices and correct[ing] a mathematical calculation." Appellant's Reply Br. 6.

After some back-and-forth, the Veterans Court marked Robinson's amended application as "received" and allowed Robinson the option to file a reply to the Secretary's June 18, 2018 Response. Robinson thereafter learned from the Veterans Court that the court was requiring him to file a motion seeking leave to amend his initial EAJA application. Robinson filed such a motion on August 26, 2018, arguing that he was allowed to amend his EAJA application as a matter of right. The Secretary opposed the motion in a September 10, 2018 filing, arguing that the proposed amendment presented arguments that Robinson should have made in a reply and that the amendment was prejudicial as it was filed just one week before a scheduled EAJA conference. Robinson filed an opposed motion seeking leave to file a reply to the Secretary's opposition and a separate opposed motion seeking to stay proceedings pending resolution of the disputed amended EAJA application.

On January 25, 2019, the Veterans Court denied Robinson's motions. As to the motion to amend, the court explained that "the motion does not identify the errors that [Robinson] wishes to correct or elucidate why the recent caselaw from the Federal Circuit prompts him to amend his petition." J.A. 131. The court acknowledged caselaw that supports allowing amendment of an initial EAJA application to correct a defect. It reasoned, however, that

Robinson's "motion to amend is vague and lacking in specificity, and he appears to seek to amend his initial fee application so that he may respond to arguments the Secretary made in his opposition to the EAJA application." J.A. 132. The court concluded that such arguments are properly submitted in a reply, rather than as an amended application. The court thus ordered that Robinson, who had not taken advantage of the court's earlier offer of a reply, submit a reply to the Secretary's response to the initial EAJA application within 10 days. *Id.*

Robinson again did not file a reply. Instead, Robinson filed a motion for reconsideration on January 30, 2019. The Veterans Court denied that motion on February 6, 2019.

On August 21, 2019, the Veterans Court issued a decision on Robinson's initial EAJA application. There was no dispute that Robinson was, as required, a prevailing party and, similarly, no argument from the Secretary that the Secretary's position was substantially justified. The court thus needed only to resolve the amount of reasonable attorney fees. Considering the Secretary's arguments and *Starry II*, the court denied Robinson's requested "special factor" adjustment for the hours spent on the RBA dispute. Turning to the Secretary's arguments challenging time spent on the case, the court rejected an argument that certain hours spent on the RBA dispute were unreasonable. The Veterans Court accepted, however, the Secretary's challenge to 60.6 hours spent on Robinson's request for sanctions before this court. The Veterans Court concluded that Robinson's "arguments in pursuit of his motion were not reasonable." *Robinson*, 2019 WL 3938609, at *6. Finally, the court found all requested expenses were reasonable. The court thus awarded $79,670.08 (based on the hourly rate of $203.24 for a New York Attorney multiplied by 392 hours) and $2,874 in expenses for a total of $82,544.08.

Robinson appeals.  We have jurisdiction to review decisions of the Veterans Court pertaining to "questions of law, including interpreting constitutional and statutory provisions" pursuant to 38 U.S.C. § 7292(d)(1).  We are, however, without authority to "review (A) a challenge to a factual determination, or (B) a challenge to a law or regulation as applied to the facts of a particular case."  *Id.* § 7292(d)(2).  We thus "review the Veterans Court's interpretation of EAJA without deference but may not review its application of EAJA to the facts of a particular case." *Winters v. Wilkie,* 898 F.3d 1377, 1380 (Fed. Cir. 2018).

## II. ANALYSIS

On appeal, Robinson argues: (1) the Veterans Court lacked authority to require him to file a motion for leave to amend his EAJA application; (2) the Veterans Court abused its discretion by denying him leave to amend; (3) the Veterans Court erroneously decreased the number of hours of attorney fees it awarded; and (4), in the alternative, the Veterans Court was without authority to issue a decision on Robinson's EAJA application because there was no final judgment in the case.  We address each argument in turn.

## A.

Robinson first argues that the Veterans Court lacked authority to reject his amended EAJA application.  Robinson points us to cases holding that amending an initial EAJA application is allowable, at least for the purpose of correcting a fatal defect in an initial application.  *See e.g., Scarborough v. Principi,* 541 U.S. 401, 406 (2004); *Bazalo v. West,* 150 F.3d 1380, 1383–84 (Fed. Cir. 1998); *Dunn v. United States,* 775 F.2d 99, 104 (3d Cir. 1985).  The Secretary argues that those cases, while clearly indicating that amendment is allowable, say nothing about the proper procedure for amendment.

We agree with the Secretary that the cases cited by Robinson do not foreclose the possibility that the Veterans Court could require, via a written rule, a motion prior to allowing an amendment to an EAJA application. This does not, however, resolve whether, absent such a written rule, the Veterans Court's procedure was proper. It seems that there is some dispute among the judges of that court as to the necessity of such a motion. *See Barber v. Wilkie*, No. 16-1783(E) (Vet. App. April 6, 2020), *available at* Appellant's Reply Br. Add-1 (denying the Secretary's motion to dismiss an amended EAJA application that was not accompanied by a motion for leave to amend). The inconsistent treatment of the issue by the Veterans Court strikes us as problematic and potentially misleading to EAJA applicants. We need not resolve whether the procedure used in this case was proper, however. As we discuss next, to the extent there was any error in the procedure, it was harmless.

B.

Robinson next argues that, assuming the Veterans Court was within its authority to require a motion for leave to amend, the Veterans Court abused its discretion when it denied Robinson such leave. Specifically, he argues that, because his amended EAJA application added a request for attorney fees pursuant to 28 U.S.C. § 2412(b), it was his right to file such a request, at any time. Though we need not and do not address whether every EAJA applicant has a right to file a new § 2412(b) application at any time, we agree with Robinson that, in this case, the Veterans Court abused its discretion when it denied him leave to amend his EAJA application to account for *Starry II*.

Robinson's initial EAJA application relied on *Starry I* as a basis for an increased fees award. *Starry II* specifically explained, however, that EAJA applicants should raise their "egregious" agency misconduct allegations under subsection (b), rather than, as was found acceptable by the

United States Court of Federal Claims in *Starry I*, under subsection (d). 892 F.3d at 1382–83. *Starry II* issued after Robinson's initial EAJA application was filed and, thus, the Veteran's Court should have allowed him to amend his application to address the intervening change in law.

The Veterans Court's abuse of discretion was, however, harmless. In its decision on Robinson's initial EAJA application, the court found, in a lengthy footnote, that the requirements for receiving fees under § 2412(b) were not met in this case. *Robinson*, 2019 WL 3938609, at \*4 n.4 ("[T]he Court does not find that in this litigation the Secretary has ever acted in bad faith, vexatiously, wantonly, or for oppressive reasons."). That factual finding is not reviewable on appeal and definitively forecloses Robinson's subsection (b) request.[1]

## C.

Robinson further argues that the Veterans Court wrongly reduced his EAJA attorney fees award by 60.6

---

[1] Separately, assuming without deciding that the Veterans Court lacked authority to require Robinson to seek leave to amend his initial EAJA application to correct calculations and add invoices, we hold that the process the court provided Robinson rendered any procedural error harmless. The court repeatedly invited Robinson to address those issues in a reply to the government's response to his initial EAJA application. He declined to file such a reply. Because Robinson was given ample opportunity to address any clerical-type issues with his initial EAJA application and was told on multiple occasions of the process by which he should address those issues, any error in requiring Robinson to seek leave to amend his application was harmless. Any actual harm to Robinson as to the calculation errors is the direct result of the decision to ignore the court's suggestion.

hours.  The court's determination turned on its factual finding that certain hours spent by Robinson's counsel on a request for sanctions were unreasonable.  *Robinson*, 2019 WL 3938609, at \*6.  We are without jurisdiction to review such a factual finding and Robinson fails to articulate any error of law made by the Veterans Court.  We, therefore, dismiss this aspect of Robinson's appeal.

## D.

Finally, Robinson argues that the Veterans Court was without authority to issue a decision on his EAJA application because judgment has not yet been entered in the case.  In *Bly v. Shulkin*, 883 F.3d 1374 (Fed. Cir. 2018), we explained that the time for filing an EAJA application is "within thirty days of final judgment in the action."  *Id.* at 1375 (quoting 28 U.S.C. § 2412(d)(1)(B)).  And, a "final judgment" means "a judgment that is final and not appealable"—such finality normally occurs 60 days after judgment is entered.  *Id.*  Thus, an EAJA application is typically due within 90 days after the entry of judgment.

Robinson filed his initial EAJA application on April 4, 2018, well within the 90-day window for filing such an application following the Veteran's Court's March 5, 2018 judgment, though before the judgment was final.  Importantly, the premature nature of the application is inconsequential.  An EAJA application that is filed before a judgment becomes final is properly treated as timely.  *Bly*, 883 F.3d at 1377 n.1.  Following receipt of Robinson's application, the Veterans Court did not issue a decision on Robinson's initial EAJA application until August 21, 2019, well after the close of the 90-day period.  Given this timeline of events, it is clear that Robinson's initial EAJA

application was timely filed, the judgment became final, and the Veterans Court properly issued a decision.[2]

### III. CONCLUSION

We have considered Robinson's remaining arguments and find them unpersuasive. For the reasons discussed above, we *dismiss* Robinson's challenge to the Veteran's Court's determination of the number of awardable hours of attorney fees and *affirm* in all other respects.

**AFFIRMED-IN-PART AND DISMISSED-IN-PART**

---

[2] Robinson's reliance on *Shalala v. Schaefer*, 509 U.S. 292 (1993), is misplaced. In that case, the Court held that, due to a district court's failure to comply with the then-extant requirement of Federal Rule of Civil Procedure 58 that judgment be entered as a separate document, the time for filing an EAJA application after final judgment had not expired. *Id.* at 302–03. The Veterans Court is not bound by the requirements of the Federal Rules of Civil Procedure; it prescribes its own procedural rules. *See* 38 U.S.C. § 7264. Robinson identifies no Veterans Court procedural rule requiring judgment be entered as a separate document and we have not independently found one. *See generally* Vet. App. R. 36.